UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE CARLTON SMITH, <br><br> Plaintiff, <br><br> v. <br><br> L. STEPP, et al., <br><br> Defendants. <br> _____ / | No. C 13-3316 MEJ (pr) <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON REMAINING EXCESSIVE FORCE CLAIM; STAYING ACTION AND REFERRING FOR SETTLEMENT PROCEEDINGS** <br><br> **(Docket No. 96)** |

## INTRODUCTION

Plaintiff Lawrence Carlton Smith, a prisoner at California State Prison–Los Angeles County, filed a pro se civil rights action under 42 U.S.C. § 1983 complaining of conditions at Salinas Valley State Prison (SVSP), High Valley State Prison (HVSP) and Corcoran State Prison (CSP), where he was formerly incarcerated. The Court screened the complaint and found it stated cognizable claims for excessive force as alleged against seven defendants at SVSP. Plaintiff later voluntarily dismissed one of the seven defendants, defendant Zornes, as he has been deceased since October 2012.

On March 6, 2015, the Court partially granted defendants' motion for summary judgment based on plaintiff's failure to exhaust administrative remedies and dismissed all of plaintiff's claims except for one claim of excessive force as alleged against defendants Mejia and Garcia relating to an August 27, 2010 incident. Defendants have filed a motion for summary judgment addressing the merits of the remaining excessive force claim. Plaintiff has filed an opposition, and defendants have filed a reply.

**BACKGROUND**

I.    Defendants' Version of Events

Defendants submit declarations and documentary evidence showing the following version of what transpired on August 27, 2010:

On August 27, 2010, plaintiff was housed in the SVSP Administrative Segregation Unit at Facility D, Building 8, Cell 221. Garcia Decl. ¶3; Pl. Dep. 13:3-6[1]. Pursuant to CDCR Operations Manual, section 52080.24, an inmate is placed in administrative segregation when his presence in the institution's general population presents an immediate threat to the safety of the inmate or others, endangers institution security, or jeopardizes the integrity of an investigation of an alleged serious misconduct or criminal activity. Id.[2]

On August 27, 2010, plaintiff was under an involuntary medication order for serious mental illness. Pl. Dep. 24:4-7; Dkt. No. 1-9. During the early morning, plaintiff refused to take his court-ordered medication and was smearing feces in his cell. Pl. Dep. 26:8-17; Garcia Decl. ¶4; T. Smith Decl., Ex. A.

Ms. Hayden, the assigned licensed vocational nurse who was distributing medication to inmates, informed defendant Garcia, a correctional officer, that plaintiff had refused to take his court-ordered medication and that he was smearing feces in his cell. Garcia Decl. ¶4. After his discussion with Ms. Hayden, defendant Garcia immediately went downstairs and informed Sergeant D. Sandoval of the situation. Garcia Decl. ¶4; Sandoval Decl. ¶3. At approximately 7:20 a.m., Sergeant Sandoval instructed defendant correctional officers Garcia and Mejia to put on their personal-protective ("hazmat") suits and to post outside cell number 221, which was solely occupied by plaintiff, while an extraction team was assembled. Sandoval Decl. ¶3; Garcia Decl. ¶5; Mejia Decl. ¶3. Nurse Hayden checked with the

---

[1] Excerpts of plaintiff's deposition testimony are located at Dkt. No. 96-6.

[2] Defendants submit the applicable portion of the CDCR Operations Manual as Exhibit B to their Request for Judicial Notice (dkt. no. 98). The Request for Judicial Notice is hereby GRANTED.

2

Correctional Treatment Center's emergency room and confirmed that plaintiff was clear for cell extraction because he was not on cardiac or respiratory medications. T. Smith Decl., Ex. A.

When defendants Garcia and Mejia arrived at plaintiff's cell, the cell's windows were smeared with feces, but they had a clear view of plaintiff inside the cell and saw that he was naked. Garcia Decl. ¶6; Mejia Decl. ¶4; Pl. Dep. 65:4-8. As the defendants were observing him, plaintiff stated that he wanted "to go to CTC [Correctional Treatment Center]" and that he was "going to hurt" himself. Garcia Decl. ¶6; Mejia Decl. ¶5. Plaintiff then turned around and walked to the back of the cell and started to bang his head against the wall. Id. At that point, defendants became afraid that plaintiff would seriously injure himself if they did not intervene. Id.

Defendants gave plaintiff multiple verbal orders to stop banging his head against the wall and to come forward to the food port to submit to handcuffs. Garcia Decl. ¶7; Mejia Decl. ¶6. Plaintiff refused to comply with defendants' orders. Id.

Because plaintiff refused to comply with orders, defendant Garcia opened up the food port and defendant Mejia pepper-sprayed plaintiff in the upper torso and hand areas in an attempt to get plaintiff to stop banging his head and to comply with orders to submit to handcuffs. Garcia Decl. ¶7; Mejia Decl. ¶6. Defendant Garcia then activated his personal-alarm device, and both defendants continued to give plaintiff orders to stop banging his head against the wall and to submit to handcuffs. Garcia Decl. ¶8. Sergeant Sandoval responded to the alarm and stayed at the scene the entire time of the incident. Sandoval Decl. ¶¶ 4, 14.

After plaintiff continued his refusal to comply with defendants' orders, defendant Garcia pepper-sprayed plaintiff in the upper torso area. Garcia Decl. ¶8; Mejia Decl. ¶7; Sandoval Decl. ¶6. Plaintiff still did not comply. Id.

Defendants then gave plaintiff several more orders to stop banging his head against the wall and to submit to handcuffs, but plaintiff still did not comply. Garcia Decl. ¶9; Mejia Decl. ¶8; Sandoval Decl. ¶7. Defendant Mejia pepper-sprayed plaintiff again,

3

hitting him in the upper torso and head areas. Garcia Decl. ¶9; Mejia Decl. ¶8; Sandoval Decl. ¶8.

At that point, plaintiff finally complied with defendants' orders and walked back towards the food port to be handcuffed. Garcia Decl. ¶9; Mejia Decl. ¶8; Sandoval Decl. ¶8. As he was placing his hands through the food port to be handcuffed, plaintiff threw out what appeared to be feces at defendants. Garcia Decl. ¶9; Mejia Decl. ¶8. Defendant Garcia then placed handcuffs on plaintiff, and Sgt. Sandoval instructed Officer Ruiz, who was the control booth officer at that time, to open cell 221. Sandoval Decl. ¶9; Ruiz Decl. ¶7.

Sgt. Sandoval then instructed Officers Garcia and Mejia to escort plaintiff out of the cell to the building's mini-yard area for decontamination and medical evaluation. Sandoval Decl. ¶9; Garcia Decl. ¶10; Mejia Decl. ¶9. In compliance with Sgt. Sandoval's instruction, defendants escorted plaintiff out to the mini-yard. Id. After walking down the stairs and while they were still in the rotunda area, plaintiff turned towards defendant Garcia and spat at him. Garcia Decl. ¶10; Mejia Decl. ¶9; Sandoval Decl. ¶10. Plaintiff then turned towards defendant Mejia and spat at him. Id. At that time, defendants took a hold of plaintiff and, using their combined body weight, forced plaintiff to the ground to subdue him and bring him into compliance. Garcia Decl. ¶10; Mejia Decl. ¶9; Sandoval Decl. ¶11; Ruiz Decl. ¶9. Defendant Mejia then held plaintiff's head to the ground and called for a spit hood. Garcia Decl. ¶10; Mejia Decl. ¶9. Responding officers K. Gonzales and J. Rangel arrived, and Sgt. Sandoval instructed officer Gonzales to place a spit hood over plaintiff's head. Garcia Decl. ¶11; Mejia Decl. ¶11; Sandoval Decl. ¶ 11.

Officers Gonzales and Rangel escorted plaintiff to the C-pod shower for decontamination with cool running water. Sandoval Decl. ¶12; Fruithof Decl., Ex. A. Upon completion of the decontamination, plaintiff was placed into a holding cell, evaluated by medical staff, and later sent to the CTC for medical treatment. Id., Pl. Dep. 66:5-10.

At approximately 7:40 a.m. and before he was placed into a holding cell, plaintiff was medically evaluated by Nurse Hayden. Sandoval Decl. ¶12; Fruithof Decl., Ex. B. In

4

1  evaluating plaintiff's condition, Nurse Hayden noted O.C. spray, a laceration and bleeding on
2  the right side of plaintiff's head, and a complaint of pain in plaintiff's head area. Fruithof
3  Decl., Ex. B. At approximately 12:30 p.m., plaintiff was seen at the CTC emergency room
4  for a 2-to 3-cm laceration to his right side of head. Welzenbach Decl. ¶3, Ex. A. Nurse
5  Welzenbach cleaned up plaintiff's wound, which the nurse had been told was self-inflicted,
6  and closed it with Dermabond skin stitches. Id. Plaintiff was then given a tetanus/diphtheria
7  injection and left the emergency room ten minutes later. Id.

## II. Plaintiff's Version of Events

Plaintiff's version of the events differs markedly. According to plaintiff, the events occurred as follows:

On August 27, 2010, plaintiff was "gravely disabled," due to his "mental illness coupled with the forced medications." Dkt. No. 1-9 at 4.[3] His mental state prevented him from "thinking and acting properly." Id. He reports that he was "out of mind due to the strong medication." Dkt. No. 105 at 7. He recalls protesting about certain items of his property being taken from him. Id. at 5.

Plaintiff was ordered to come to his food port to "cuff up," and defendant Garcia then began spraying pepper spray into the food port. Dkt. No. 1-9 at 9. Defendant Garcia stepped back, and defendant Mejia then started spraying plaintiff. Id. Plaintiff was again ordered to cuff up, and he backed up to the port, placing his hands completely through the tray slot. Id. Plaintiff denies throwing feces at defendants and reports that it would be difficult to throw anything while bending down with hands placed together and behind his back. Dkt. No. 105 at 8. Defendant Garcia placed handcuffs on plaintiff and held onto the cuffs, while defendant Mejia began spraying plaintiff again. Dkt. No. 1-9 at 9. Defendant Mejia continued spraying plaintiff even though plaintiff was fully complying with the officers' orders. Id.

Plaintiff was removed from his cell. Id. While going down the stairs, defendant Mejia struck plaintiff in the right side of the face, "resulting in a large slash that required

---

[3] Page number citations refer to those assigned by the Court's electronic filing system and not those assigned by the parties.

5

1  stitches." Id. Plaintiff was taken to the mini-yard and forced to the ground by defendant
2  Garcia, who lied about plaintiff spitting so that a spit mask could be placed over plaintiff's
3  head. Id. The spit mask was used to stop the blood from plaintiff's facial wound from
4  dripping onto the ground. Dkt. No. 105 at 8.

5      Another inmate, Charles Ellis, observed the cell extraction from his own nearby cell
6  and signed a declaration on August 29, 2010 reporting what he saw. Dkt. No. 105, Ex. E.
7  According to the declaration, Ellis saw defendant Garcia and an unknown officer approach
8  plaintiff's cell and order plaintiff to cuff up. They were wearing white hazmat suits and face
9  guards. Id. Ellis then witnessed defendant Garcia yell something and start to spray into
10 plaintiff's cell. Id. Defendant Garcia then stepped back and the other officer started to spray
11 into the cell. Id. Ellis then observed plaintiff comply by placing his hands through the open
12 tray slot. Id. Defendant Garcia then placed handcuffs on plaintiff, while the unknown
13 officer took out another can of spray and started to spray plaintiff, even as plaintiff was
14 complying with all orders. Id. Once plaintiff was brought out of the cell, the officers
15 escorted him down the stairs and the unknown officer struck plaintiff on the right side of the
16 face. Id.[4]

## DISCUSSION

I.  Legal Standard for Summary Judgment

Summary judgment is proper where the pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A

---

[4] Defendants object to Ellis's declaration on the ground that it is not in conformity with 28 U.S.C.A. § 1746, which requires a declaration to be made "substantially" in the following language: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date)." The objection is overruled. Ellis stated in his declaration "I inmate Charles Ellis H-70127 write this affidavit under the penalty of perjury as a sworn testimony." Dkt. No. 105, Ex. E. He also dated the declaration and stated "All I have stated is true." Id. The Court finds this language substantially complies with 28 U.S.C.A. § 1746. Defendants' objections to the other exhibits submitted by plaintiff in opposition to summary judgment are overruled as moot because the exhibits are not pertinent to the Court's analysis.

dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See id.

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  Id.  The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  See id. at 324 (citing Fed. R. Civ. P. 56(e) (amended 2010)).

For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party.  See Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999).  The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact.  See T.W. Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence.  See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge).  Here, plaintiff's verified complaint is considered along with the evidence in his opposition (dkt. no. 105) in evaluating the motion for summary judgment.

7

II.	Analysis

Defendants argue: (1) plaintiff's claims against defendants in their official capacities are barred by the Eleventh Amendment; (2) there is no evidence of excessive force; and (3) defendants have qualified immunity.

A.	Official Capacity Claims

Plaintiff has sued defendants in their individual and official capacities seeking injunctive and monetary relief. Dkt. 1 at 5-6. Defendants move to dismiss all claims against them in their official capacities. "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985). Unless waived, the Eleventh Amendment bars a federal court award of damages against a state, state agency, or state official sued in an official capacity. Graham, at 169. As there has been no waiver here, defendants are entitled to summary judgment on plaintiff's claims against defendants in their official capacities for money damages. Plaintiff's claims for damages brought against defendants in their individual capacities are unaffected by this ruling.

Defendants are also entitled to summary judgment on plaintiff's claims for injunctive relief against defendants in their individual and official capacities because plaintiff has been transferred from SVSP and there is no reasonable expectation nor demonstrated probability that he will again be subjected to the same prison conditions from which he seeks declaratory and injunctive relief. See Dilley v. Gunn, 64 F.3d 1365, 1368-69 (9th Cir. 1995). This action will be limited to damages.

B.	Merits of Excessive Force Claim

Defendants argue that they are entitled to summary judgment on the merits of the excessive force claim because they used reasonable force when transferring plaintiff on August 27, 2010.

The arbitrary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 5 (1992). When prison officials stand accused of using excessive force in violation of the Eighth

8

Amendment, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Id. at 6-7. In this inquiry, a court may consider the need for application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. Id. at 7. A prisoner need not allege that he suffered serious injury in order to establish an Eighth Amendment violation. Id. "Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts." Wilkins v. Gaddy, 559 U.S. 34, 38 (2010).

Taking the evidence submitted by plaintiff as true, and drawing all inferences therefrom in plaintiff's favor, as is required on defendants' motion for summary judgment, there is a triable issue of fact as to whether defendants' use of force was excessive. According to plaintiff, defendants used pepper spray on him while he was restrained and fully complying with orders to submit to handcuffs and later proceeded to punch him in the face while he was restrained in handcuffs and not resisting his escort out of his cell. Defendants' account of plaintiff banging his head against the wall and resisting orders would certainly justify the use of substantial force to control him. However, plaintiff's own sworn statements, as well as the statement of the inmate-witness Ellis, dispute defendants' account and include a specific denial that plaintiff ever resisted orders. In any event, an inference could reasonably be drawn that even if defendants needed to control plaintiff, they could have done so without pepper-spraying plaintiff after he had been restrained and without punching him in the face while he was being escorted in restraints, and that defendants did so maliciously and in order to inflict pain on plaintiff.

Defendants argue that because plaintiff suffered only minor injuries, a lack of evidence supports his claim. This argument is unpersuasive. First, the Court cannot agree that plaintiff suffered only minor injuries as even defendants concede that the cut on his face required immediate medical attention and stitches. In any event, the extent of injury is only one factor that suggests whether the force used was excessive. See Hudson, 503 U.S. at 7.

9

1 As noted above, injury and force are only imperfectly correlated, and it is the latter that
2 ultimately counts. See Wilkins, 559 U.S. at 36-38 (inmate who was gratuitously beaten by
3 guards did not lose his ability to pursue excessive force claim merely because he had the
4 good fortune to escape without serious injury).

5 Accordingly, defendants are not entitled to summary judgment on the merits of
6 plaintiff's excessive force claim.

### C. Qualified Immunity

8 Defendants argue that, assuming their actions are found to be unconstitutional, it
9 would not have been clear to a reasonable official that such conduct was unlawful and that
10 therefore they are entitled to qualified immunity.

11 The defense of qualified immunity protects "government officials . . . from liability
12 for civil damages insofar as their conduct does not violate clearly established statutory or
13 constitutional rights of which a reasonable person would have known." Harlow v.
14 Fitzgerald, 457 U.S. 800, 818 (1982). A court considering a claim of qualified immunity
15 must determine (1) whether the plaintiff has alleged the deprivation of an actual
16 constitutional right and (2) whether such right was clearly established such that it would be
17 clear to a reasonable officer that his conduct was unlawful in the situation he confronted.
18 Pearson v. Callahan, 555 U.S. 223, 232, 236 (2009) (overruling requirement in Saucier v.
19 Katz, 533 U.S. 194 (2001), that court ruling on qualified immunity claim consider first prong
20 of test before addressing second prong). The court may exercise its discretion in deciding
21 which prong to address first. Id.

22 The Court finds granting summary judgment on grounds of qualified immunity is
23 improper in this case. Resolving all factual disputes in plaintiff's favor at this stage, the
24 Court concludes that if plaintiff's version of events is true, then defendants violated his
25 clearly established right to be free from excessive force. See Martinez v. Stanford, 323 F.3d
26 1178, 1183 (9th Cir. 2003) ("the law regarding a prison guard's use of excessive force was
27 clearly established by 1994"). Granting summary judgment on the ground of qualified
28 immunity is "improper if, under the plaintiff's version of the facts, and in light of the clearly

10

established law, a reasonable officer could not have believed his conduct was lawful." Schwenk v. Hartford, 204 F.3d 1187, 1196 (9th Cir. 2000). See, e.g., Watts v. McKinney, 394 F.3d 710, 712-13 (9th Cir. 2005) (finding prison guard could not reasonably believe he could lawfully kick prisoner who was on the ground and in handcuffs).

While resolution of the factual issues may well relieve defendants of any liability in this case, if plaintiff's version of the facts were to prevail at trial, a reasonable jury could conclude that defendants inflicted unnecessary and wanton force in violation of plaintiff's constitutional rights. Defendants are therefore not entitled to summary judgment on grounds of qualified immunity.

## CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. Defendants' motion for summary judgment is hereby GRANTED IN PART and DENIED IN PART as follows:

    a. Summary judgment is GRANTED in favor of defendants Mejia and Garcia on plaintiff's official capacity claims for money damages and on plaintiff's claims for injunctive relief.

    b. Summary judgment is DENIED with respect to plaintiff's excessive force claim against defendants Mejia and Garcia in their individual capacity. Relief on this claim will be limited to money damages.

2. The excessive force claim is hereby REFERRED to Magistrate Judge Nandor Vadas pursuant to the Pro Se Prisoner Settlement Program for settlement proceedings. Such proceedings shall take place within 120 days of the date this order is filed, or as soon thereafter as Magistrate Judge Vadas's calendar will permit. Magistrate Judge Vadas shall coordinate a place, time, and date for one or more settlement conferences with all interested parties and/or their representatives and, within fifteen days of the conclusion of all settlement proceedings, shall file with the Court a report thereon.

The Clerk shall send Magistrate Judge Vadas a copy of this order.

3. The case is STAYED pending the settlement proceedings. The Clerk shall

1 ADMINISTRATIVELY CLOSE this case until further order of the Court.

2     4. The docket shows both a defendant "CO M. Mejial" and a defendant "Matthew Mejia." As counsel has identified "Mejia" to be the correct spelling of defendant's name, the Clerk shall terminate "CO M. Mejial" from the docket in this action.

This Order terminates Docket Number 96.

IT IS SO ORDERED.

DATED: May 10, 2016

Maria-Elena James
United States Magistrate Judge